IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN R. RICHARDSON,

    *Plaintiff,*

    v.

ERIC K. SHINSEKI, SECRETARY, U.S. DEPARTMENT OF VETERANS AFFAIRS,

    *Defendant.*

Civil Action No.: ELH-10-3302

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff John R. Richardson, an African American male born December 11, 1941, has sued Eric Shinseki, Secretary of the U.S. Department of Veterans Affairs, defendant. *See* Complaint for Employment Discrimination ("Complaint," ECF 1) at 1 ¶ 2. Plaintiff, who formerly served as Chief of the Pastoral Care Service for the Veterans Affairs Maryland Health Care System ("VAMHCS"), *id.* at 3 ¶ 19, alleges that he was subjected to a hostile work environment, commencing in April 2007 with an investigation into his alleged sexual harassment of a female VAMHCS employee, and ending when he retired in January 2008. *Id.* at 2 ¶ 10, 5 ¶ 2, 3 ¶ 19. In the interim, Richardson was temporarily reassigned from his position at the Perry Point Veterans Administration Medical Center ("Perry Point") to the Baltimore Veterans Administration Medical Center ("Baltimore") and subjected to a ten-day disciplinary suspension, without pay. *Id.* at 2 ¶ 10.

Plaintiff filed a formal complaint of discrimination with the Department of Veterans Affairs (the "Agency" or "VA") on October 11, 2007, and received the Final Agency Decision

on September 20, 2010.[1]   *Id.* at 2 ¶ 11, 3 ¶ 17.   This suit followed in three counts: "Discriminatory Investigation" by the Agency's Administrative Board of Investigation ("ABI") on the basis of sex, race, and color (Count I); "Discriminatory Discipline" (Count II); and "Failure to Investigate and Correct Hostile Work Environment" (Count III).   All of the claims are founded on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. *Id.* 5, 8, 9.[2]

Defendant has filed a Motion to Dismiss, or In The Alternative For Summary Judgment ("Motion," ECF 12),[3] along with a Memorandum In Support Of Motion To Dismiss ("Memo," ECF 12-1).   Plaintiff has not responded to the Motion.   The Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

## Factual and Procedural Background[4]

Richardson was formerly employed as Chief of the Pastoral Care Service for the VAMHCS, at Perry Point.   *See* Complaint at 3 ¶ 19.   He retired on January 7, 2008, after more

---

[1] The record does not contain the Final Agency Decision.

[2] Plaintiff also alleges that he was the victim of age discrimination in connection with the ABI investigation, the imposition of discipline, and the creation of a hostile work environment. *See* Complaint at 2 ¶ 10.   But, he fails to plead a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq. Id.*   Therefore, this Opinion addresses only the claims of discrimination based on sex, race, and color under Title VII.

[3] Defendant has appended as an exhibit to his Motion the deposition transcript of John Richardson, conducted by an EEO investigator on April 9, 2008, in connection with plaintiff's discrimination complaint against the VA.   Richardson was represented by counsel at the deposition.

[4] The Court must construe the facts alleged in the light most favorable to plaintiff, as the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *accord Scott v. Harris*, 550 U.S. 372, 380 (2007).

than 35 years as Chaplain at Perry Point.  *See* Depo. Transcript of John Richardson (April 9, 2008) ("Richardson Depo."), at 4.

In January 2007, Nancy McLaughlin, a Caucasian woman and a VAMHCS employee, informed Melinda Benedict, another VAMHCS employee, that plaintiff had been sexually harassing her for over 25 years.  *See* Complaint at 3 ¶¶ 23-24.  The incidents that Ms. McLaughlin reported to had all occurred at least 10 years earlier, according to plaintiff.  *Id.* at 4 ¶¶ 24-25.

Then, according to the Complaint, on March 22, 2007, Ms. McLaughlin told her supervisor, David Otto, that plaintiff was "a real pervert," and claimed that, at a Veterans Affairs Voluntary Service ("VAVS") meeting the previous day, plaintiff had told McLaughlin, in front of a group of people, "You'll always be my baby girl."[5]  Complaint at 4 ¶¶ 29-30.  McLaughlin found the comment "offensive."  *Id.* ¶ 30.

As a result of the allegations made by Ms. McLaughlin to Mr. Otto, on April 5, 2007, Dennis Smith, Director of VAMHCS, ordered an investigation of McLaughlin's claims of sexual harassment, conducted by the Administrative Board of Investigation ("ABI").  *Id.* at 5 ¶ 2.  The ABI was composed of two Caucasian women and one Caucasian man.  *Id.* at 5 ¶ 3.  Beginning on April 17, 2007, plaintiff was reassigned to the VA in Baltimore, pending the ABI's investigation.  *Id.* at 6-7 ¶ 19.  During the course of the investigation, plaintiff and thirteen others

---

[5] In his Complaint at 6 ¶ 14, Plaintiff admits to the following interaction with Ms. McLaughlin in March 2007:

> **Plaintiff:** Nancy, I was teasing Tina [Ms. McLaughlin's sister, who at the time worked in the VA Canteen Retail Store at Perry Point] about you, you being the baby sister.
> **Ms. McLaughlin:** I bet she doesn't like it.
> **Plaintiff:** You will always be the baby sister.

were interviewed.[6]  *Id.* at 7 ¶ 24.   But, plaintiff alleges that two key witnesses were not questioned, both of whom are African American men whose versions of events were favorable to plaintiff.  *Id.* at 7 ¶ 25.   Plaintiff alleges that one, Harry Korsch, would deny that the incident even occurred, *id.* at 6 ¶ 13, and the other, Chaplain Richard H. Hargett, would speak to an innocuous encounter between plaintiff and Ms. McLaughlin.[7] *Id.* ¶ 15.

On April 30, 2007, the ABI concluded, by a preponderance of the evidence, that plaintiff sexually harassed McLaughlin.  *Id.* at 7 ¶ 27.   Plaintiff then returned to his position at Perry Point.  *Id.* ¶ 29.   Upon plaintiff's return, his supervisor, Glenn Costie, a Caucasian man, was responsible for deciding the appropriate disciplinary measures to be imposed upon plaintiff, in light of the ABI's findings.  *Id.* at 8 ¶ 31.   Plaintiff avers that Mr. Costie decided to discipline him for "use of offensive language," "based solely" on Ms. McLaughlin's "version of events that allegedly occurred at the . . . VAVS meeting." *Id.* ¶ 34.   According to plaintiff, Mr. Costie stated that this was the only allegation that he could substantiate. *Id.* ¶ 32, 34.

On June 1, 2007, Mr. Costie issued a proposed suspension of 14 calendar days for plaintiff.  *Id.* ¶ 36.   On July 11, 2007, plaintiff provided a written reply to Mr. Costie.  *Id.* ¶ 37.   Plaintiff also orally responded to Mr. Costie on July 20, 2007.  *Id.* ¶ 38.   On August 3, 2007,

---

[6] Plaintiff complains that he was not questioned about the incident at the VAVS meeting. *See* Complaint at 5 ¶ 4.

[7] Plaintiff also alleges that another VA employee, Margaret Hornberger, was present at the VAVS meeting and, like Mr. Korsch, "did not witness any interaction between Plaintiff and Ms. McLaughlin at the VAVS meeting."  *See* Complaint at 5 ¶¶ 5-6.  However, it is not clear from the Complaint or plaintiff's deposition whether she was interviewed by the ABI.  In any event, plaintiff asserts that she was not interviewed by Glenn Costie, who, as plaintiff's supervisor, was responsible for disciplining plaintiff in light of the findings of the ABI.  *Id.* at 8 ¶ 33.  However, Mr. Costie did not conduct an independent investigation; he merely determined the appropriate discipline based on the ABI conclusions.

plaintiff's suspension was reduced to 10 calendar days, *id.* at 9 ¶ 39, which plaintiff served from August 19 to August 28, 2007. *Id.* ¶ 40.

On Saturday, September 15, 2007, plaintiff and Chaplain Hargett attended a "Patient Carnival" together, at which Ms. McLaughlin was also present. Complaint at 9 ¶ 43, 46. Plaintiff claims he did not interact with Ms. McLaughlin at the event. *Id.* at 10 ¶ 51. In fact, plaintiff claims he "deliberately avoided her. . .." *Id.* at 9 ¶ 48. However, Ms. McLaughlin alleged that plaintiff "'looked at her directly in the eye and held the stare.'" *Id.* at 10 ¶¶ 51-52. Ms. McLaughlin's sister, Patsy Wooters, who was also present, approached plaintiff, and, in an angry confrontation, stated: "'You're not supposed to be around my sister, you're not supposed to be here.'" *Id.* at 10 ¶ 54.

Plaintiff reported the incident to the Agency police on September 15, 2007, and filed a "Report of Contact" regarding the confrontation. *Id.* at 10 ¶¶ 55-56. A "supervisory inquiry" was conducted, commencing on September 27, 2007, and closing on October 4, 2007, at which point a request to convene a formal ABI was made.[8] *Id.* at 10 ¶ 58, 11 ¶ 60. Neither plaintiff nor Chaplain Hargett was interviewed, although several others were questioned. *Id.* at 10 ¶ 59. By this point, claims plaintiff, his work environment had become "intolerable due to the accusations and rumors that he had sexually harassed Ms. McLaughlin and other women." *Id.* at 11 ¶ 64. On January 7, 2008, plaintiff retired. *Id.* ¶ 65.

Plaintiff alleges that the events recounted above caused him reputational harm as well as emotional distress to plaintiff and his wife. *Id.* at 11 ¶ 66. Plaintiff also alleges that he suffered financial loss, personal humiliation, and mental anguish and suffering. *Id.* at 12.

---

[8] The parties do not indicate whether an ABI investigation was conducted.

Plaintiff pursued his administrative remedies.   He contacted the Office of Resolution Management on August 29, 2007, complaining of a hostile work environment, reassignment to the Baltimore VA office in 2007, and disparate treatment as to the proposed suspension, all based on race, sex, and age discrimination.   Complaint at 2 ¶ 10.   He filed a formal complaint of discrimination with the Agency on October 11, 2007.   Complaint at 2 ¶ 11.   The Agency produced   a report of investigation on April 25, 2008.   As noted, plaintiff received the VA's "Final Agency Decision" on September 20, 2010.[9]   *Id.* at 3 ¶¶ 13, 17.

This suit followed.   Plaintiff seeks, *inter alia*, compensatory damages, back pay, and expungement from his personal records of any reference to the allegations lodged against him concerning sexual harassment.   Complaint at 12.

### Discussion

### I.

Defendant has moved to dismiss or, in the alternative, for summary judgment.   When deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court considers the complaint, as well as documents attached to it.   *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("We may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic . . . ." (citation omitted)).   Under FED. R. CIV. P. 12(d), if "matters outside the pleadings are presented to and not excluded by the court" in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary

_____

[9] According to the Complaint, at 3 ¶ 16, plaintiff withdrew his complaint from the EEOC on April 7, 2009, and the Administrative Law Judge dismissed that matter on May 5, 2009.  The Government does not contend that plaintiff failed to exhaust his administrative remedies.

judgment under Rule 56." *Id.* However, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

I am mindful that this case is in the early stages of litigation. Ordinarily, summary judgment is inappropriate if "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)). Failure to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Evans*, 80 F.3d at 961. *But see Harrods Ltd.*, 302 F.3d at 244 ("[I]n some cases courts have held that summary judgment was premature even when the opposing party failed to file a [Rule 56(d)] affidavit.").

Plaintiff has failed to file a Rule 56(d) affidavit. Indeed, plaintiff has never responded to defendant's Motion. However, defendant has submitted with his Motion plaintiff's deposition testimony, taken on April 9, 2008, during the course of the EEO investigation. Therefore, I will construe the Motion as one for summary judgment. In resolving a summary judgment motion, the court must, of course, view the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587; *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

Under Rule 56(a), summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former FED. R. CIV. P. 56(c)).   When this burden is met, the non-moving party then bears the burden of demonstrating that there are disputes of material fact so as to preclude the entry of judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To meet this burden, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*; *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).   Stated another way, "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts'" showing that there is a dispute of material facts. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former FED. R. CIV. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24.

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  If "the evidence is such that a reasonable jury could return

a verdict" for the non-moving party, there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

I am satisfied that no reasonable jury could return a verdict for plaintiff in this case. Accordingly, for the reasons that follow, I will grant summary judgment to defendant on all counts of the Complaint.

<u>II.</u>

Plaintiff complains in Count I about a "discriminatory investigation."  He seems to suggest that the investigation was inadequate, pointing out that the ABI did not question Mr. Korsch or Chaplain Hargett during the investigation.  Complaint at 7 ¶ 25.  In Count II, plaintiff contends that he was the victim of "discriminatory discipline."  *Id.* at 8.  Although plaintiff's Complaint is not entirely clear, it appears that this allegation is based on a claim that the suspension was inappropriate, excessive, and disparate.  *Id.* ¶ 35.  Further, in Count III, plaintiff contends that he was subjected to a hostile work environment.  *Id.* at 9.  In his view, his work environment was "intolerable" as a result of the "accusations and rumors that [plaintiff] had sexually harassed Ms. McLaughlin and other women."  *Id.* at 11 ¶ 64.  Plaintiff also seems to refer to the confrontation with Ms. McLaughlin's sister at the Patient Carnival, and the investigation of that incident, as evidence of the hostile work environment.  *Id.* at 10 ¶ 54.

Defendant contends that plaintiff cannot support a claim for discriminatory investigation because he cannot show that the investigation was less fair or less comprehensive than that for other employees who are not African American or male.  *See* Memo at 6.  Defendant also contends that plaintiff cannot support a claim for discriminatory discipline because he cannot show that he was punished more severely than other employees not of his same race and sex who

engaged in similar conduct.  *Id.* at 8-9.  Further, defendant contends that plaintiff cannot support

a claim for hostile work environment because he cannot show that "plaintiff was targeted based

on his race, gender, or other protected status.  Rather, it is evident that this 'hostile work

environment' was a product of the sexual harassment allegations against the plaintiff."  *Id.* at 10.

Defendant also argues that plaintiff cannot support a claim for hostile work environment because

he cannot show that, even if there was harassment, it was so severe and so pervasive as to create

an objectively hostile work environment.  *Id.* at 10.

### III.

#### *Count I: "Discriminatory Investigation"*[10]

To state a disparate treatment claim, a plaintiff lacking direct evidence of discrimination

may proceed under what is popularly known as the *McDonnell Douglas* proof scheme.[11]  *See*

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Plaintiff must first establish a "prima

facie case" of discrimination or retaliation, by a preponderance of the evidence.  *Merritt v. Old*

*Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).  The precise formulation of the

required prima facie showing will vary in "different factual situations."  *McDonnell Douglas,*

---

[10] This portion of the Opinion does not address the disciplinary suspension.

[11] A plaintiff can proceed on a Title VII discrimination claim by offering "'direct or indirect'" evidence of discrimination, under "'ordinary principles of proof.'"  *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997).  "To avoid summary judgment" when proceeding under ordinary principles of proof, "'the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'"  *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (citations omitted) (internal quotation marks omitted), *cert. denied*, 535 U.S. 933 (2002).  As plaintiff has not alleged direct evidence, this Opinion will address plaintiff's claims under the burden-shifting approach of *McDonnell Douglas Corp.,* 411 U.S. 792.  *See also Laber v. Harvey*, 348 F.3d 404, 432 (4th Cir. 2006).

411 U.S. at 802 n.13.  If the plaintiff establishes a prima facie case, "a presumption of illegal discrimination [or retaliation] arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory or non-retaliatory reason for its adverse employment action.  *See Hoyle v. Freightliner, LLC*, No. 09-2024, 2011 WL 1206658, at *11 (4th Cir. Apr. 1, 2011).  "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted."  *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 (1981).  In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).  Put another way, if the employer produces evidence that could persuade a fact finder that it had a legitimate, non-discriminatory or non-retaliatory reason for its actions, "the defendant has done everything that would be required of [it] if the plaintiff had properly made out a *prima facie* case," and therefore, "whether the plaintiff really did so is no longer relevant."  *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

When the defendant meets his burden, the plaintiff must then prove, by a preponderance of the evidence, "that the proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination" or retaliation.  *Burdine*, 450 U.S. at 256.  If a plaintiff proves a prima facie case, and the defendant submits no evidence of any legitimate basis for its actions, the fact finder may "infer discriminatory [or retaliatory] animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations."  *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978).   The "ultimate burden of

- 11 -

persuasion . . . never 'shifts' from the plaintiff" to prove intentional unlawful discrimination or retaliation.  *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (internal citation omitted).

In order to establish a prima facie case that will support a "discriminatory investigation" claim, such as the one plaintiff has brought in the case at bar, a plaintiff must present a prima facie case showing that he or she: (1) is a member of a protected class, (2) performed his or her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated differently than similarly situated employees not within the protected class.  *Hoyle*, 2011 WL 1206658, at *6; *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010).  Once the plaintiff establishes a prima facie case, the burden of going forward shifts to the employer, who must articulate a legitimate non-discriminatory reason for the differential treatment.  *Burdine,* 450 U.S. at 253; *Merritt*, 601 F.3d at 294.  If the employer can meet that burden, the plaintiff must then show that the employer's stated reason was merely a pretext for discrimination.  *Burdine,* 450 U.S. at 253; *Merritt,* 601 F.3d at 294.

Title VII clearly prohibits discrimination on the basis of "race, color, religion, sex, or national origin."  *See* 42 U.S.C. § 2000e-2(a)(1).  As an African American and a male, plaintiff can certainly establish that he is a member of a protected class.  Plaintiff also maintains he had a 35 year record of "impeccable service" and, with the obvious exception of the sexual harassment allegations lodged against him by Ms. McLaughlin, there is no evidence in the record to contradict his claim of exemplary service.  *See* Depo. Transcript of John Richardson at 13. However, "[t]he law is clear that to prevail on either [a discrimination or retaliation] theory of recovery, plaintiff must first establish that he suffered some adverse employment action."

*Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006).  Plaintiff has not shown that he was subject to an adverse employment action, within the meaning of Title VII.  Nor can plaintiff show that he was treated differently from similarly situated employees outside the protected class.  *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 59 (2006) (concluding that "discriminated against" in the context of Title VII "refers to distinctions or differences in treatment that injure protected individuals").

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (alteration in original) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir.), *cert. denied*, 543 U.S. 959 (2004)), *cert. denied*, 552 U.S. 1102 (2008); *see also Morales-Vallellames v. Potter*, 605 F.3d 27, 36 (1st Cir. 2010) (noting that Title VII "adverse employment actions" include "a material loss in benefits" and "a less distinguished title").  Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion."  *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999); *see also James*, 368 F.3d at 376.  When considering whether an employer action constitutes an adverse employment action, the salient "question is whether there was a change in the terms or conditions of [the plaintiff's] employment which had a 'significant detrimental effect' on [her] opportunities for promotion or professional development."  *James*, 368 F.3d at 376 (quoting *Boone*, 178 F.3d at 256).

Plaintiff was subject to an investigation with regard to sexual harassment allegations that were lodged against him.  But, the investigation itself is not an adverse employment action.  *See*

*Settle v. Baltimore County*, 34 F.Supp.2d 969, 992 (D. Md. 1999) ("[I]f a disciplinary investigation is reasonably rooted in articulable facts justifying such an investigation, neither inconvenience nor emotional anxiety on the employee's part will constitute an 'employment injury' sufficient to render the investigation itself an adverse employment action independently cognizable under Title VII.").

Nor can plaintiff's temporary reassignment from Perry Point to Baltimore during the investigation, which took a mere thirteen days, be deemed adverse to plaintiff; the brief reassignment did not constitute a change in the terms or conditions of plaintiff's employment that had a significant detrimental effect on plaintiff's opportunities for promotion or professional development. Plaintiff concedes that, even though he was primarily based at Perry Point, he had an office in Baltimore, where he was responsible for supervising chaplains. And, while in Baltimore, he performed the same type of duties he performed at Perry Point. *See* Depo. Transcript of John Richardson at 22-23. The only negative consequences flowing from plaintiff's temporary relocation were that some meetings he had planned to attend were cancelled, and he was unable to immediately implement a program for returning veterans that he had designed, or to train a new program assistant. *Id.* at 23, 37. Although plaintiff seems to believe that his performance was affected by the temporary reassignment to Baltimore, he makes no allegation that he was unable to perform his duties once he was back at Perry Point.

Furthermore, plaintiff's allegations about the insufficiency or inaccuracy of the investigation are irrelevant. A flawed investigation does not, without evidence of a discriminatory purpose for the perceived flaws, constitute an adverse employment action for the

purpose of an employment discrimination action. *See Cupples v. AmSan*, *LLC*, 282 Fed.Appx. 205 (4th Cir. 2008).

In *Cupples*, the Fourth Circuit rejected an employee's claim that his employer conducted an investigation of a sexual harassment complaint in a shoddy manner, as a pretext for discharging him due to his age. The Court said that, while Cupples "makes much of his criticism that [the employer's] investigation into his misconduct was either inadequate or overly aggressive[,]. . .focusing on the quality of internal investigations misses the point. A federal court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.'" *Id.* at 210 (internal citations omitted).

Even if the investigation of the claim against plaintiff was insufficient, plaintiff has failed to present evidence that the alleged insufficiency was due to some unlawful, discriminatory purpose or animus. Consequently, the alleged insufficiency is irrelevant. *See id.* ("Cupples offered no probative evidence of discriminatory animus.").

Assuming, *arguendo*, that plaintiff could establish that he was the victim of an adverse employment action, he is still unable to establish that he was treated differently than similarly situated employees outside the protected class. In particular, plaintiff has failed to identify similarly situated employees who are female or outside his racial group who were accused of sexual harassment and either did not have those claims investigated, were not reassigned pending the outcome of the investigation, or enjoyed an investigative procedure that was superior to the one applied in his case.[12]

_____

[12] At his deposition, plaintiff referred to two individuals he believed were accused of

As plaintiff has clearly failed to establish a prima facie case of discrimination as to Count I of his Complaint, "Discriminatory Investigation," defendant's motion for summary judgment as to Count I is granted.

*Count II: "Discriminatory Discipline"*

Plaintiff alleges disparate treatment in the disciplinary context.  In order to support a "discriminatory disclipline" claim, a plaintiff must make a prima facie showing that he or she: (1) is a member of a protected class, (2) engaged in prohibited conduct comparable in seriousness to that of employees not belonging to the protected class, and (3) that the disciplinary measures taken against the plaintiff were more severe than those enforced against the other employees.  *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir. 1993).  Once the plaintiff establishes a prima facie case, the case proceeds through the burden-shifting framework discussed earlier.

Plaintiff cannot establish a prima facie case of "discriminatory discipline."  Again, plaintiff can certainly establish that he is a member of a protected class under Title VII, which prohibits discrimination on the basis of "race, color, religion, sex, or national origin."  *See* 42 U.S.C. § 2000e-2(a)(1).  Yet, plaintiff does not attempt to demonstrate that other similarly situated employees, outside the protected class, who were also accused of sexual harassment and/or disciplined for offensive language, received a less severe punishment.  Moreover, the

---

(…continued)

sexual harassment at Perry Point, "Broffy" and "Dr. Levenson."  *See* Depo. Transcript of John Richardson at 48-49.  Plaintiff does not, however, indicate the races of those two individuals, the sex of Dr. Levenson, nor that they were treated more favorably than he was.

punishment imposed upon plaintiff was well within the pre-determined range for the offense, as plaintiff himself alleged in the Complaint, where he averred: "According to the VA Handbook, punishment for 'disrespectful conduct, use of insulting, abusive, or obscene language to or about other personnel, patients or visitors' ranges from a minimum 'reprimand' to a maximum 'removal' for a first offense."  Complaint at 8 ¶ 35.

In his deposition testimony, plaintiff averred that his "accuser[, Ms. McLaughlin,] was White, all of the people who basically was [Ms. McLaughlin's] witnesses were White.. . .The investigating team was White," and Perry Point is an area "known for its racism down through the years."  *See* Depo. Transcript of John Richardson at 12, 17.  Plaintiff's observation that his accuser, her witnesses, and the investigating team were all Caucasian, and that he worked in an area in which racism has historically been problematic, does not amount to an adequate claim of racial bias.  *See, e.g., Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 282 (4th Cir. 2000) ("Law does not blindly ascribe to race all personal conflicts between individuals of different races.  To do so would turn the workplace into a litigious cauldron of racial suspicion.  Instead, legally sufficient evidence is required. . .").

Similarly, plaintiff has never articulated any reason as to why he believes he was disciplined harshly because of his sex.  When pressed on the issue during his deposition, Richardson merely reiterated his positive record of employment, *id.* at 13:

**Q. And in regard to management giving you a 10-day suspension, why do you feel that this was because of your sex?**
A. Why do I feel because of my sex?
**Q. Yes.**
A. Because there was no indication--first of all, I have 35 years of impeccable service at the same hospital, 35 years in the same office.  I received all of my promotions, even on a national level, from that same office.  There have never been any complaints about me.  Only one, in which one young lady I was

- 17 -

disciplining, tried to make some accusation once.  But other than that, there have never been anyone throughout the hospital accused me of being inappropriate in any way with them.  That is for 35 years.

When pressed further on the issue, plaintiff cited discriminatory attitudes in larger society as evidence of discrimination against him on the basis of sex.  He testified: "[I]t is assumed in many circles that a Black man is prone to be aggressive towards a White woman. And in that area, if a White woman said I did it, even though it went back all those years, they assume that I did it."  *Id.* at 41.  But, Richardson never identified any particular words or actions of any person that led him to believe he was disciplined harshly because of his sex.

Plaintiff has clearly failed to establish a prima facie case of discrimination as to Count II of his Complaint, "Discriminatory Discipline."   Therefore, defendant's motion for summary judgment is granted as to Count II.

### Count III: "Hostile Work Environment"

In Count III, plaintiff alleges a claim of hostile work environment.  To proceed on a Title VII hostile work environment claim, "a plaintiff must show that the offending conduct: (1) was unwelcome, (2) was because of her sex [or race], (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer."  *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (citing *Ziskie v. Mineta,* 547 F.3d 220, 224 (4th Cir.2008)); *Okoli v. City of Baltimore,* No. 08-2198, 2011 WL 3437698, at *3 (4th Cir. Aug. 08, 2011); *Hoyle,* 2011 WL 1206658, at *11.  The abusive or "hostile" work environment must be objectively hostile, not merely subjectively so.  *See Bonds*, 629 F.3d at 385 (citing *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir.2008)).

In making the determination of whether a work environment is objectively hostile, several factors are relevant, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Liability may be imputed to the employer if it "'knew or should have known about the harassment and failed to take effective action to stop it'" or failed to "'respond with remedial action reasonably calculated to end the harassment.'" *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) (internal citations omitted). "'The institution and enforcement of [an anti-harassment] policy, in conjunction with an adequate complaint procedure, aid the employer in establishing that it has exercised reasonable care to prevent discrimination[,]'" so long as the policy is effective and administered in good faith. *Id.* (internal citations omitted).

Plaintiff cannot establish a prima facie case of discrimination in support of his hostile work environment claim. He cannot show that he was the victim of unwelcome harassment, that any perceived harassment was due to his sex or race, or that it rose to the level of being severe and pervasive. Further, plaintiff cannot demonstrate a basis for imputing liability to his employer for any perceived discriminatory harassment.

As to the element of unwelcome conduct, the harassment cited by plaintiff in his Complaint consists of the accusations of sexual harassment made against him, and the confrontation with Ms. McLaughlin's sister at the Patient Carnival. Yet, the ABI determined that plaintiff had, indeed, sexually harassed Ms. McLaughlin. I am unaware of any authority to support the position that a substantiated claim of sexual harassment constitutes workplace harassment.

Moreover, the confrontation with Ms. McLaughlin's sister, Patsy Wooters, did not constitute workplace harassment, as Ms. Wooters does not appear to have been a VAMHCS employee.[13]  Although courts have considered the conduct of non-employee third parties when assessing whether a plaintiff was subject to a hostile work environment, such conduct is generally relevant only "'if the employer ratifies or acquiesces in the [conduct].'"  *Fahnbulleh v. GFZ Realty, LLC*, No. 10–02074, 2011 WL 2652250, at *3 (D. Md. July 07, 2011) (quoting *Hylind v. Xerox Corp.,* 380 F. Supp. 2d 705, 716 (D. Md. 2005).  Far from ratifying Ms. Wooters' conduct, plaintiff's employer responded to Ms. Wooters' complaint by immediately conducting an inquiry.

Plaintiff further alleges that he was subjected to a hostile work environment because he was suspended for ten days.  At his deposition, the following exchange occurred:

> **Q. Why do you feel that this 10-day suspension was taken to subject you to a hostile work environment?**
>
> A. Certainly, if my supervisor suspended me for 10 days for nothing, I feel that it is hostility.

Depo. Transcript of John Richardson at 46.

In addition, plaintiff complains that his transfer to Baltimore pending the outcome of the initial ABI investigation constituted a hostile work environment.  The following deposition testimony is relevant:

> **Q. And in regard to being reassigned to Baltimore, why do you feel that this created a hostile work environment for you?**
>
> A. It created a hostile work environment for me, because first of all, I could not go back up to my area and work with my staff up there. . . . And also, at the same

---

[13] Ms. McLaughlin has another sister, "Tina," who was a VAMHCS employee.  But, it was her sister, Patsy Wooters, who confronted plaintiff at the Patient Carnival.

> time, the rumor had gotten around that. . . [t]hey had accused me of sexual
> harassment, and that I was going to have to go.

*See* Depo. Transcript of John Richardson at 31-32.

In my view, plaintiff misapprehends the term "hostile" in the context of an employment discrimination case.  To be sure, disciplinary action may feel hostile in the common-use sense of the word, but it is not necessarily actionable.  Moreover, plaintiff cannot show that any of this perceived harassment was due to his sex or race.  Rather, all the evidence points to the fact that the "rumors and accusations" of which plaintiff complains were premised on the ABI finding that he had "sexually harassed Ms. McLaughlin and other women."  Complaint at 11 ¶ 64.  A finding that plaintiff engaged in misconduct does not place plaintiff in an additional protected class.

In addition, plaintiff cannot show that any perceived harassment was "severe and pervasive."  Plaintiff's assertion that the workplace became "intolerable" is merely a conclusory allegation, devoid of any facts from which a reasonable factfinder could conclude that the workplace was *objectively* hostile or abusive.  In particular, the Complaint does not mention any specific words or conduct to which plaintiff was subjected.  Plaintiff's mere "'conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment,'. . . [and his] allegations '[un]substantiated by accounts of specific dates, times or circumstances,' are too 'general' to suffice."  *Xerxes*, 639 F.3d at 676.

Finally, plaintiff has not demonstrated a basis for imputing liability to his employer for any perceived discriminatory harassment.  Plaintiff conceded at his deposition that he never told VAMHCS management that he felt he was subjected to a hostile work environment.  Depo. Transcript of John Richardson at 29.  This was in spite of the fact that plaintiff had received

training about workplace harassment and knew that reporting to a manager or designated party was the appropriate next step.[14]  *Id.* at 27.

Plaintiff claims he did not report that he was subject to a hostile work environment because he "didn't feel comfortable," as his manager was Caucasian.  *See* Depo. Transcript of John Richardson at 40-41, 44.  I am unaware of any authority to support the position that failure to report alleged workplace harassment may be excused if the party to whom the aggrieved person is required to report is of the same race as the alleged harasser, absent some claim of impropriety on the part of the employer's representative.

A plaintiff's failure to utilize an available complaint procedure will, in the absence of extenuating circumstances, relieve an employer of responsibility of the failure to respond to and correct a hostile work environment.  *See, e.g., Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 270 (4th Cir. 2001); *Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 267 (4th Cir. 2001).  There is a high bar for establishing extenuating circumstances that justify exception to this rule.  For example, fear of reprisal and the perceived futility of reporting have been held to

---

[14] The following deposition testimony of Richardson is relevant:

**Q. Now, does your facility have a harassment/hostile work environment policy?**

A. Yes, it does.

**Q. Were you trained in that policy?**

…

A. . . .I went through the training of it, yes.  Basically, yes, I'm aware of the program.

**Q. So what instructions does it give that you're supposed to do if you feel that you're being harassed or subjected a to [sic] hostile work environment?**

A. Well, the instructions that, I don't recall what the instructions give.  But I know that if I am not being a manager [sic], I would report it to the EEO.

. . .

**Q. And did you ever tell management that you felt that you were subjected to a hostile work environment?**

A. No, I did not.

Depo. Transcript of John Richardson at 27, 29.

be insufficient reasons for failing to avail oneself of grievance procedures.  *Barrett,* 240 F. 3d at 267-8.  Plaintiff's discomfort in approaching a Caucasian manager, particularly in the absence of some prior indication that the manager harbored some racially discriminatory animus toward plaintiff, cannot suffice to clear that bar.

As plaintiff has clearly failed to establish a prima facie case of discrimination as to Count III of his Complaint, "Failure to Investigate and Correct Hostile Work Environment," defendant's motion for summary judgment is granted.

### Conclusion

For the foregoing reasons, the Court will grant Defendant Eric K. Shinseki's Motion for Summary Judgment.  A separate Order consistent with this Opinion follows.


Date: September 9, 2011                                    _____/s/_____
                                                                          Ellen Lipton Hollander
                                                                          United States District Judge